**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDRE ADIPUTRA, *et al.*, | ) | Case No. 07 C 250 |
| | ) | (and consolidated and related civil cases |
| Plaintiffs, | ) | No. 07 CV 1387; No. 07 CV 4845; No. 07 |
| | ) | CV 4954; No. 08 CV 2358; No. 08 CV |
| v. | ) | 2359; No. 08 CV 3324; No. 08 CV 3325) |
| | ) | |
| THE BOEING COMPANY, *et al.*, | ) | MDL 1925 (Case No. 08 CV 2357) |
| | ) | |
| Defendants. | ) | Honorable John F. Grady |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT MEMORANDUM OF LAW IN
SUPPORT OF THEIR AMENDED MOTION TO DIMISS ON THE GROUNDS OF
FORUM NON CONVENIENS**

## TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT………………... 6

II. BACKGROUND……………………………………………………………... 9

III. ARGUMENT……………………………………………………………………12

    A. Indonesian Courts are not an Adequate Forum for this Litigation……….... 12

        1.  There is Prevalent Discrimination against Chinese

            Citizens in Indonesia………………………………………………….14

        2.  Angkasa Pura II is a Party Entity Owned by

            the Indonesian Government…………………………………………... 15

    B.  The Balancing of the Private Interest Factors Favors Trial

    in the United States……………………………………………………………… 17

        1.  The Sources of Proof are in the United States………………………... 17

        2.  All Necessary Witnesses are Available in the

            United States…………………………………………………………. 18

        3.  The Accident Location is not a Determinative Private

            Interest Factor in this Litigation……………………………………….19

    C.  The Weighing of Public Interest Factors Favors Trial

    in the United States……………………………………………………………… 20

        1.  Deference Should Be Given to the Plaintiffs' Chosen Forum……..20

        2.  The United States has a Strong Interest in this Controversy………..21

        3.  Indonesian Law Can Be Applied in the United States ……………..22

IV. CONCLUSION……………………………………………………………… 23

## TABLE OF AUTHORITIES

Page

**Cases**

*Baris v. Sulpicio Line, Inc.*,
   932 F.2d 1540 (5th Cir. 1991)……………………………………………………... 12

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico, S.A.*,
   528 F. Supp. 1337 (S.D.N.Y. 1982)……………………………………………….. 15, 16

*Carlenstople v. Merck & Co., Inc.*,
   638 F. Supp. 901 (S.D.N.Y. 1986)……………………………………………….21, 22

*Clerides v. Boeing Co.*,
   534 F.3d 623 (7th Cir. 2008)……………………………………………………… 6, 7

*Doe v. Exxon Mobil Corp.*,
   393 F. Supp. 2d 20 (D.D.C. 2005)………………………………………………….13

*Gonzales v. P.T. Pelangi Niagra Mitra Int'l, P.T.*,
   196 F. Supp. 2d 482 (S.D.Tex. 2002)……………………………………………….18

*Gschwind v. Cessna Aircraft Co.*,
   161 F.3d 602 (10th Cir. 1998)………………………………………………...…..20

*Herbstein v. Breutman*,
   743 F. Supp. 184 (S.D.N.Y. 1990)……………………………………………….22

*In re Air Crash Near Athens, Greece on Aug. 14, 2005*,
   479 F. Supp. 2d 792 (N.D.Ill. 2007)……………………………………………….. 6

*Iragorri v. United Tech Corp.*,
   274 F.3d 65 (2d Cir. 2001)……………………………………………………….21

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
   256 F.3d 548 (7th Cir. 2001)……………………………………………………..21

*Kamel v. Hill-Rom Co., Inc.*,
   108 F.3d 799 (7th Cir. 1997)………………………………………………… 12

*Karim v. Finch Shipping Co., Ltd.*,
   265 F.3d 258 (5th Cir. 2001)……………………………………………………..12, 17

*Kaufman v. Luzern*,
   No. 95 Civ. 3316 (RPP) 1996 WL 79322 (S.D.N.Y. Feb.23, 1996)……………….. 19, 20

- 2 -

*Lehman v. Humphrey Cayman, Ltd.*,
    713 F.2d 339 (8th Cir. 1983)..............................................................22, 23

*Madanes v. Madanes*,
    981 F. Supp. 241 (S.D.N.Y. 1997).........................................................21

*McCafferty v. Teledyn Cont. Motors, Inc.*,
    Nos. 03-CV-6729, 03-CV-6730, 03-CV-6731,
    2004 WL 1858080 (E.D.Pa. Aug. 19, 2004).............................................17

*McLennan v. Am. Eurocopter Corp., Inc.*,
    245 F.3d 403 (5th Cir. 2001)................................................................ 12

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...............................................................12, 23

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)..........................................................................12

*Rasoulzadeh v. Assoc. Press*,
    574 F. Supp. 854 (S.D.N.Y. 1983)....................................................... 14

*Reid-Walen v. Hansen*,
    933 F.2d 1390 (8th Cir. 1991)..............................................................22

*Sangeorzan v. Yangming Marine Transp. Corp.*,
    951 F. Supp. 650 (S.D.Tex. 1997)........................................................ 16

*Sydow v. Acheson & Co.*,
    81 F. Supp. 2d 768 (S.D.Tex. 2000)..................................................... 12

## Regulations and Rules

Fed. R. Evid. 201(b)(1)............................................................................. 13

## TABLE OF SUPPORTING DECLARANTS AND EXHIBITS

**Exhibits**

(1) Amended Declaration of Allison Kendrick in Support of Defendants' Amended Joint Motion to Dismiss on the Grounds of Forum *Non Conveniens* ("Kendrick")

(2) Declaration of Richard Brehaus in Support of the Motion to Dismiss on the Grounds of Forum *Non Conveniens* ("Brehaus")

(3) Supplemental Declaration of M. Priyatna Abburrasyid in Support of Defendants' Amended Joint Motion to Dismiss on the Grounds of Forum *Non Conveniens* ("Priyatna")

(4) Declaration of Michael S. Barton in Support of Defendants' Joint Motion to Dismiss on the Grounds of Forum *Non Conveniens* ("Barton")

(5) *Justyantoro, et. al., v. Boeing Co., et. al.* First Amended Complaint for case No. 07 CV 1387

(6) *Xu Kai Zu, et. al. v. Boeing Co., et. al.* Complaint at Law for case No. 07 CV 4845

(7) Xu Tian Wu Responses to Requests for Admission from Defendant the Boeing Company

(8) Xu Tian Wu Answers to Interrogatories from Defendant Boeing Company

(9) Xu Feng Chun Responses to Requests for Admission from Defendant the Boeing Company

(10)   Xu Feng Chun Answers to Interrogatories from Defendant Boeing Company

(11)   Affidavit of Brian LaCien

(12)   Articles Relating to the Indonesian Judicial System

     a.  Budianto, Lilian. *Indonesia's Judicial System Rated the Worst in Asia: Survey*, Jakarta Post, Sept. 15, 2008.

     b.  Davies, Ed. *Indonesia Judicial System Needs Overhaul-Court Head*, Reuters India, Jan. 23, 2008.

     c.  Gale, Bruce. *Reform of Judicial System Long Overdue*, Straits Times (Singapore), Oct. 10, 2008.

     d. Guntensperger, Patrick. *The Ridiculous 'Time' Ruling*, Jakarta Post, Sept. 13, 2007.

     e. Yakup, Bahrul Ilmi. *Poor Legal Culture in Indonesia*, Jakarta Post, Jul. 16, 2007.

     f. *RI Courts Shun Reform*, Jakarta Post, Jun. 21, 2007.

(13) Articles Relating to the Treatment of Individuals of Chinese Descent in Indonesia

     a. Bhaskara, Harry. *Fear Haunts Ethnic Chinese*, Jakarta Post, Apr. 11, 2008.

     b. Chen, Jay and Deborah Kuo. *More Concern from US Congress About Indonesia's Ethnic Chinese*, Central News Agency, Sept. 11, 1998.

     c. Hakin, Zakki. *Political Will Needed to Eliminate Racial Discrimination*, Jakarta Post, Feb. 3, 2003.

     d. Read, Richard. *Unrest Bleeds Indonesia of Talent: Attacks on Ethnic Chinese Force a Young Couple to Abandon a Business and Flee to Portland*, The Oregonian, Nov. 22, 1998.

     e. Timberlake, Ian. *Indonesian Chinese Eye Fight for Rights Wahid's Steps Raise Minorities' Hopes*, Washington Times, Jun. 23, 2000.

     f. Utomo, Desi. *Indonesia: Discrimination Against Ethnic Chinese*, Green Left Weekly, May 24, 2000.

     g. Yew-Fong, Hui. *Chinese Indonesians Living on the Edge*, Straits Times (Singapore), Mar. 6, 2008.

     h. *Ethnic Chinese and Discrimination: What Next?*, Jakarta Post, Feb. 16, 2007.

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs allege a variety of products liability and negligence claims against Defendants the Boeing Company and United Technologies Corporation arising from the crash of Mandala Airlines Flight 91 at Polonia Airport in Medan, Indonesia on September 5, 2005. Plaintiffs seek to recover for wrongful death, personal injury, loss of consortium, and property damage. Though none of the Plaintiffs are American citizens, the named Defendants are American companies doing business and operating out of the United States, specifically Washington, Illinois, and Connecticut. As a result, Plaintiffs have filed this lawsuit in Federal Court for the Northern District of Illinois. Because Indonesia is not an adequate alternative forum to adjudicate the matter and both the private and public interest factors that the Court must consider in performing its forum *non conveniens* analysis favor the United States, the Defendants motion to dismiss on these grounds should be denied.

Indonesia is not an adequate alternative forum for this litigation for two fundamental reasons: 1) discrimination against individuals of Chinese descent exists in Indonesia; and 2) a party which Boeing Company suggests could be at fault is owned by the Indonesian government. These factors will assuredly cloud the Indonesian judicial system of fairness and due process to the Plaintiffs. Moreover, the judicial system as a whole in Indonesia is utterly inept. The system there is riddled with corruption and considered the worst system in all of Asia. The purpose of dismissal under forum *non conveniens* is to "serve the conveniences of the parties and the ends of justice." *Clerides v. Boeing Co.*, 534 F.3d 623, 627-38 (7th Cir. 2008), *aff'g In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d 792 (N.D.Ill. 2007). The Indonesian courts simply do not serve the ends of justice.

- 6 -

Indonesian prejudice towards the Chinese is both rampant and well-documented. This blatant prejudice against a minority group is precisely what the Court cautioned in *Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008). A minority plaintiff will not receive a fair trial from a jury comprised of inherently prejudicial people. Moreover, Angkasa Pura II, the operator of Polonia Airport is government owned. When a governmental entity is a party to a litigation, the impartiality element may be compromised. Thereby, it constitutes yet another reason why this Court should be reluctant to consider Indonesia as an adequate alternative forum.

Additionally, the private interest factors tip towards the United States in this action. Because this is a products liability proceeding, the sources of proof remain in the United States. The products at issue, namely the plane and its engines, were produced by American companies doing business in the United States. The Boeing Company produced the 737-200 plane in question in the United States, and United Technologies Corporation produced the engines in United States. Because all corresponding documentation for these products can be found in the United States, the sources of proof as to their testing, manufacturing, production, and design are located here. Congruently, all witnesses attesting to these tests and manufacturing notes will be employees of these companies from the United States. Finally, the actual crash location is immaterial to the litigation because it is a products liability matter. The fact that the plane which was produced in America and whose engines were produced in the United States crashed in Indonesia should not have a significant bearing on where the matter should be adjudicated. Therefore, the private interest factors favor litigation in the United States.

Finally, even the public interest factors weigh towards trial in the United States. Primarily, as is established by a long string of case law, deference should be given to the Plaintiffs' chosen forum. In this instance, the Plaintiffs selected the United States as their forum

- 7 -

because the Defendants have significant ties to the United States. Additionally, the United States itself has a strong interest in this controversy. The products at issue are not only manufactured and produced by American companies, but they are also used by American citizens. The United States has a vested interest in providing a forum for redress of injuries caused by its citizens and keeping the general public safe from faulty products. Finally, should the Court determine that Indonesian law should govern this action; federal courts are quite capable of applying foreign law. Therefore, public policy factors favor litigation in the United States as well.

Because Indonesia is not an adequate alternative forum and both the private and public factors favor litigation in the United States, this Court should deny Defendants' motion to dismiss on the grounds of forum *non conveneins*.

## II.    BACKGROUND

On September 5, 2005, Mandala Airlines Flight 91 crashed on takeoff at Polonia Airport in Melan, Indonesia. Brehaus ¶ 3 at Ex. 2. As the aircraft attempted to take off at Medan, it failed to become fully airborne and caught fire after skidding to a halt. Priyatna ¶ 2 at Ex. 3.

As a direct result of the accident, 100 of the 117 passengers were killed and 15 of the 17 remaining were seriously injured. *Id.* The majority of those killed and injured were Indonesian citizens or residents, though at least 2 decedents were residents and citizens of China. Kendrick ¶ 13 (h)-(i) at Ex. 1. There are 21 Plaintiffs or claims for relief, in the two actions at issue in this response. *See Justyantoro* and *Xu Kaizu* Complaints at Ex. 5 and 6. Of those claims, two arise from the death of residents and citizens of China. *See* Xu Tian Wu Answers to Interrogatories from Defendant the Boeing Company at Ex. 8; Xu Feng Chun Answers to Interrogatories from Defendant the Boeing Company at Ex. 10. Moreover, of those claims, 20 of the 21 are wrongful death actions. *See Justyantoro* and *Xu Kaizu* Complaints at Ex. 5 and 6.

The accident aircraft was a Boeing model 737-200 aircraft equipped with two Pratt & Whitney model JT8D engines. Brehaus ¶ 4 at Ex. 2; Barton ¶ 7 at Ex. 4. Boeing maintains its corporate headquarters in Chicago, Illinois. Brehaus ¶ 14(h) at Ex. 2. The records of Boeing's commercial aircraft division are located in Seattle, Washington. Brehaus ¶ 14(h) at Ex. 2. Documents and witnesses within Boeing's possession, custody, or control relating to the design, manufacture, assembly, testing, certification, and customer support services for all Boeing 737 model aircraft, including model 737-200 aircraft, are located in Seattle, Washington. Brehaus ¶ 14(g) at Ex. 2. The aircraft at issue was assembled in the State of Washington. Brehaus ¶ 14(g) at Ex. 2.

- 9 -

The two engines on the accident aircraft were manufactured by Pratt & Whitney. Barton ¶ 7 at Ex. 4. Pratt & Whitney is an unincorporated division of United Technologies Corporation with its principal place of business in Connecticut. Barton ¶ 2 at Ex. 4. United Technologies Corporation is a Delaware Corporation with its principal place of business located in Connecticut. Barton ¶ 2 at Ex. 4. All of the documentary evidence regarding the design and manufacture of the engines on the accident aircraft is within United Technologies Corporation's possession in the United States. Barton ¶ 17 at Ex. 4.

The Polonia Airport is operated by a company called Angkasa Pura II, which is wholly owned by the Indonesian government. Brehaus ¶ 8 at Ex. 2. Angkasa Pura II is responsible for the operation of ten Indonesian airports. *Id.* In its brief, Boeing Company suggests that Angkasa Pura II may bear some fault for the accident, and Boeing Company has filed affirmative Defenses contending that Angkasa Pura II bears fault for the accident. *See* Boeing Company's Motion to Dismiss on the Grounds of Forum *Non Conveniens* at p. 6.

A representative from the U.S. National Transportation Safety Board ("NTSB") participated in the investigation along with Indonesian officials. The Boeing Company and United Technologies Corporation served as technical advisors to this representative and provided technical assistance to the investigation. Brehaus ¶ 10, 13 at Ex. 2; Barton ¶ 5, 11 at Ex. 4. As is typical in such investigations, some investigation activities occurred in the United States. Brehaus ¶ 14(b) at Ex. 2.

The Plaintiffs assert a theory of products liability against both the Boeing Company and United Technologies Corporation. *See Justyantoro* and *Xu Kaizu* Complaints at Ex. 5 and 6. More specifically, they allege that the aircraft and engines were defective, unreasonably

dangerous and/or unfit for their intended use, as well as faulty in their design, manufacture, and/or assembly. *Id.*

Furthermore, it is well supported that Indonesia has a corrupt judicial system in desperate need for an overhaul. *See* Articles Relating to the Indonesian Judicial System at Ex. 12; *See* Affidavit of Brian LaCien at Ex. 11. This corruption reaches as high as the judges sitting on Indonesian courts. *Id.* Furthermore, Indonesia is well known for housing prejudicial views against individuals of Chinese descent. *See* Articles Relating to the Treatment of Individuals of Chinese Descent in Indonesia at Ex. 13; *See* Affidavit of Brian LaCien at Ex. 11. This prejudice has been a part of Indonesian culture for hundreds of years and is still imbedded in Indonesian citizens today. *Id.*

## III. ARGUMENT

The doctrine of forum *non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Pursuant to this doctrine, a court may only dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

Federal courts employ a two-part analysis when applying the forum *non conveniens* doctrine in the international context. *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981). The first step involves a determination of whether an adequate and available foreign forum exists. *Sydow v. Acheson & Co.*, 81 F. Supp. 2d 768 (S.D.Tex.2000). Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001). If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors is needed. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1550-51 (5th Cir. 1991).

## A. Indonesian Courts are not an Adequate Forum for this Litigation.

For an alternative forum to qualify as an adequate forum, it must, among all other things, be fair. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799 (7th Cir. 1997). An alternative forum qualifies as "adequate" as long as the parties will be treated fairly and will not be deprived of all remedies. *Piper*, 454 U.S. at 254 n. 22. Courts have held Indonesia as an *inadequate*

- 12 -

alternative forum. *See e.g.*, *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005);

It should be noted that the *Doe* court allowed the use of articles and press reports to assist in the determination of the adequacy of an alternative forum. *Doe*, 393 F. Supp. 2d at 29, n. 8. There, plaintiff used press reports regarding the disappearance of Indonesian investigators. *Id*. at 29. The court denied the defendant's motion to dismiss under forum *non conveniens* because litigating there would pose a threat to the plaintiffs. *Id.* The court allowed this information to be considered in making its determination of whether Indonesia is an adequate alternative forum under Rule 201(b)(1) of the Federal Rules of Evidence. Fed. R. Evid. 201(b)(1). It held that "a court may take judicial notice of a fact that is 'generally known within the territorial jurisdiction of the trial court'." *Doe*, 393 F. Supp. 2d at 29, n 8.

Several news reports or news commentary exist relating to the condition of the Indonesian court system. *See* Newspaper Articles Relating to the Indonesian Judicial System. These reports and commentary indicate that the Indonesian judicial system is full of corruption. This rampant corruption has been linked throughout the entire system. *See* Ex. 12(b) relating to the Indonesian Judicial System. In fact, corruption among judges in Indonesia remains a key problem and the whole judicial system still needs a root-and-branch overhaul. *Id.* Moreover according to a recent poll, Indonesia is regarded as having the worst judicial system in all of Asia: a continent not exactly known for its judicial prowess. *See* Ex. 12(a) relating to the Indonesian Judicial System. Like in *Doe*, this Court should allow these accessible reports to be considered when determining the adequacy of the Indonesian courts as an alternative forum under Rule 201(b)(1) of the Federal Rules of Evidence. With this corruption running wild in courts throughout Indonesia, it cannot be considered an adequate alternative forum. Defendant Boeing Company suggests that Angkasa Pura II, an entity owned by the Indonesian government,

is potentially at fault for this accident. Assuming Boeing Company's contention is true, a transfer from the United States Federal Court system to Indonesia would strip the Plaintiffs of a fair trial and due process because a potentially liable party or defendant is owned by the government, the government controls the Indonesian court system, and corruption is rampant within the Indonesian court system.

## 1.    There is Prevalent Discrimination against Chinese Citizens in Indonesia.

An alternative forum is not deemed adequate when a presence of discrimination against a certain class exists, and said class constitutes one of the parties. In *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854 (S.D.N.Y. 1983), the court denied a dismissal under a forum *non conveniens* argument for fear that the safety of the plaintiffs would be at risk due to a highly discriminative culture in Iran. There, plaintiff owners of a house in Iran brought suit against defendant lessors for breach of contract. *Id.* at 855. Their cause of action was based upon an unapproved sublease to Canadian Press. *Id.* At this time, the Canadian Embassy in Iran had sheltered and engineered the escape of American diplomats after seizure of the American Embassy in Tehran. *Id.* As such, Canadians were regarded by Iranians with complete and utter disfavor. *Id.* The court denied the motion to dismiss for forum *non conveniens* because "if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot." *Id.* at 861. Simply because the plaintiffs had leased to a third party who then in turned subleased to the highly discriminated Canadian Press, the Iran citizen plaintiffs were at risk of serious injury.

In this case, some of the Plaintiff decedents are Chinese. Kendrick ¶ 13(h)-(i). It is well documented that Chinese living in Indonesia are subject to racial discrimination. *See* Articles Relating to the Treatment of Individuals of Chinese Descent in Indonesia at Ex. 13. According to these articles, most Indonesians consider the Chinese-Indonesians as a separate group from the

- 14 -

majority indigenous Indonesians due to different "ethnicity". *See* Ex. 13(f) relating to the
Treatment of Individuals of Chinese Descent in Indonesia. Racial prejudice against Chinese in
Indonesia has deep historical roots. *Id.* Despite reform efforts, this trend continues today. *Id.*
According to the attached articles, this prejudice is rooted in Indonesian society, and to dismantle
it is a long and difficult task. *Id.* This perpetuating bias is similar to the Canadian bias
documented in *Rasoulzadeh*, though this fact pattern is more directly related to the bias. In fact,
there is an even greater chance of discrimination and bias than in *Rasoulzadeh* because the
plaintiffs are the exact group that requires the protection. Whereas in *Rasoulzadeh* the court was
concerned with the safety of native Iranians returning home, here, Plaintiffs are the minority,
discriminated against class. *See* Ex. 13(a) relating to the Treatment of Individuals of Chinese
Descent in Indonesia. An even stricter analysis should be used in this case than in *Rasoulzadeh*
because the potential discrimination and bias that the court referenced is greater here where
Chinese plaintiffs would have to present their case to a jury of Indonesians in an Indonesian
court. Therefore, Indonesia is not an adequate alternative forum for this litigation because of the
inherent bias Chinese Plaintiffs would receive from the court.

### 2. Angkasa Pura II is a Party Entity Owned by the Indonesian Government.

Courts have found that the most perilous obstacles to conducting litigation, evidenced by
a complete absence of due process and fairness in the alternative forum, will render that forum
inadequate. A party defendant that is either wholly or partially owned by the potential
alternative foreign forum state constitutes such an absence of fairness. The Federal Court for the
Southern District of New York found Chile to be an *inadequate* alternative forum for this exact
reason. In *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico, S.A.*, 528 F. Supp.
1337, 1342 (S.D.N.Y. 1982), the court concluded that, where one party was a state owned

- 15 -

corporation, "serious questions about the independence of the Chilean judiciary" rendered Chile an inadequate forum. There, a significant doubt remained whether plaintiff could be assured a fair trial in the Chilean courts in view of the fact that the defendant was state owned. *Id.*

Similarly, the Federal Court for the Southern District Court of Texas found Taiwan as an *inadequate* forum for the same reason. In *Sangeorzan v. Yangming Marine Transp. Corp.*, 951 F. Supp. 650, (S.D.Tex. 1997), the court decided, where defendant was only 48% percent owned by the Taiwanese government, Taiwan was not an adequate alternative forum. There, the court retained doubts about the Taiwanese courts' willingness or ability to allow plaintiffs to bring suit against a government owned entity. *Id.* at 653-54. The court reasoned that it would be nearly impossible for Taiwanese courts to fairly and justly decide claims against a government money-making enterprise. *Id.* at 654.

In the case at bar, it is undisputed that Polonia Airport is the location of the aviation accident at issue. It is also clear that Polonia Airport is operated by Angkasa Pura II, which is wholly owned by the Indonesian government. Brehaus ¶ 8 at Ex. 2. Though not a named party defendant in this litigation, the same analysis should be applied here as a potential defendant, Angkasa Pura II, is government owned. The Boeing Company suggests that Angkasa Pura II may be potentially liable for the crash as they are responsible for the proper preparation for, and response to, accidents at these airports. *See* Defendant's Motion at p. 6; *Brehaus* ¶ 12 at Ex. 2. Yet the Defendants suggest moving the litigation to Indonesia by submitting this motion before this Court. The concern cited in *Canadian Overseas Ores Ltd.* and *Sangeorzan* is present. Here, like in those cases, a government entity is involved in the litigation. Because of that, a cloud of unfairness will be cast upon the Plaintiffs should this litigation be dismissed under a forum *non conveniens* motion and proceed in Indonesia. In that instance, the Plaintiffs would be denied a

- 16 -

fair and unbiased trial which is sufficient to prevent a motion to dismiss on such grounds. The combination of a corrupt system that already prejudices against Chinese Plaintiffs in a matter against a government owned entity would surely prevent a fair trial. Therefore, Indonesia is not an adequate alternative forum because Angkasa Pura II is wholly owned by the government.

**B.      The Balancing of the Private Interest Factors Requires Trial in the United States.**

Assuming *arguendo* that Indonesia is an adequate alternative forum, the next step in the process of removal requires applying a balancing of private interest factors. "The private factors to be considered in a forum *non conveniens* analysis relate to the convenience of the parties." *Karim*, 265 F.3d at 268 n. 14. These factors include, but are not limited to, the: 1) relative ease of access to sources of proof; 2) availability of witnesses; and 3) benefit of viewing the premise of the accident. With these factors, the Court should find that the balance of private interest factors points to trial in the United States.

    **1.      The Sources of Proof are in the United States.**

Ideally, the litigation should proceed in the jurisdiction where the sources of proof are present. In *McCafferty v. Teledyne Cont. Motors, Inc.*, Nos. 03-CV-6729, 03-CV-6730, 03-CV-6731, 2004 WL 1858080 (E.D.Pa. Aug. 19, 2004), the court denied a motion to dismiss on forum *non conveniens* grounds. The cause of action in that case arose from a plane crash in Indonesia. *Id.* at *1. That court found that the case should not be transferred because the cause of action was for products liability against American companies. *Id.* at *3. "Consequently, the operative facts upon which liability is premised for the instant matter occurred in the United States." *Id.* Therefore, the court concluded that the private interest factors favored litigating the case in the United States.

- 17 -

This is analogous to the case at bar. The nature of Plaintiffs' claims primarily involved theories of liability based upon manufacturing and/or design defect of the aircraft or engine by the Defendants. *See Justyantoro* and *Xu Kaizu* Complaints at Ex. 5 and 6. Like in *McCafferty*, the crash occurred in Indonesia with non-American plaintiffs. The operative facts on which liability and damages were premised occurred where the two Defendant companies are located in the United States. Defendant Boeing Company maintains its corporate headquarters in Chicago, Illinois and operations in Seattle, Washington. Brehaus ¶ 14(h) at Ex. 2. Also, Defendant United Technologies Corporation is located in Connecticut. Barton ¶ 2 at Ex. 4. Therefore, because the sources of proof regarding the manufacturing, production, and design of the airplane and its engines can be found in America, the sources of proof for this products liability claim can be found here too.

## 2. All Necessary Witnesses are Available in the United States.

The location and availability of witnesses is a strong consideration in determining the private interest balance. The Federal Court for the Southern District of Texas analyzed this prong in *Gonzales v. P.T. Pelangi Niagra Mitra Int'l, P.T.*, 196 F. Supp. 2d 482 (S.D.Tex. 2002). There, Ecuadorian workers were injured on a barge in Indonesia. *Id.* at 485. The *Gonzales* court dismissed the action for forum *non conveniens* because among other reasons the court "cannot compel the attendance of unwilling witnesses who live and work on another continent...Moreover, the cost of obtaining the attendance of willing witnesses would be extraordinary if a trial was held in this [the United States] country." *Id.* at 490. The court determined that the witnesses to that cause of action would be unavailable to the jurisdiction in the United States and not compelled to testify. *Id.* The reasoning was based upon the interests of fair and complete litigation for a strict negligence case. *Id.*

- 18 -

The reasoning that was applied in *Gonzales* should be applied in this case. Because this matter concerns a products liability theory against American companies, the appropriate witnesses are those individuals who are involved with the production, manufacturing, and design of these products here in the United States. The employees of both Defendants reside in the United States either in Washington, Illinois, or Connecticut. Therefore, this matter should remain in United States federal court so as to compel these available witnesses to testify as the *Gonzales* court emphasized. In order to conduct a complete and fair trial, these Defendant witnesses will need to be available. If this matter is transferred to Indonesia, these critical witnesses would not be compelled to testify and, even if they do testify, the expense would be extraordinary. As the *Gonzales* court suggests, the litigation should be pursued where the critical witnesses are available. Because this matter concerns the production, manufacturing, and design of the airplane and its engines, the matter should be litigated in the United States where those processes occur.

## 3.    The Accident Location is not a Determinative Private Interest Factor in this Litigation.

In *Kaufman v. Luzern*, No. 95 Civ. 3316 (RPP) 1996 WL 79322 (S.D.N.Y. Feb.23, 1996), the court did not consider this factor in the balancing of the private interests when ruling on a dismissal based upon a forum *non conveniens*. There, an American plaintiff slipped on marble outside of a business and broke his wrist in Switzerland while on vacation. *Id.* at *1. He alleged that the defendant store owner was at fault because he created an unduly dangerous condition when constructing the store's walkway with slippery marble. *Id.* When using the analysis to weigh private interest factors, the court determined that the accident location was not a significant factor when weighing the private interests. *Id.* at *5. "However, because the facts of this case are straightforward, there is no reason to anticipate that inspection of the site will be

- 19 -

necessary." *Id.* Because the facts were undisputed and the visiting the location would not provide anything additional to the court, it ruled that the accident location as a private interest factor was not a significant factor to the determination of whether a dismissal on the grounds of forum *non conveniens* was warranted. *Id.* at *6.

In this case, the accident location should not be determinative of whether the case at bar should be dismissed. Like in *Kaufman*, the facts relating to the tort theory of this case are all contained in the United States. On September 5, 2005, Mandala Airline Flight 91 crashed on takeoff at Polonia Airport in Medan, Indonesia. Brehaus ¶ 3 at Ex. 2. The Plaintiffs' claims are based on products liability. *See Justyantoro* and *Xu Kaizu* Complaints at Ex. 5 and 6. There is no factual dispute as to whether the plane has crashed. The significant facts that are yet to be uncovered are those that will be unraveled during discovery, and, more specifically, the American Defendants' production, manufacturing, and design materials. Because, like in *Kaufman*, the actual accident location is unhelpful in proving the claims sought, it should not count as a factor in this determination.

Therefore, the balancing of the private interest factors, including sources of proof, witness availability, and accident location, requires the matter to be resolved in the United States.

## C.     The Weighing of Public Interest Factors Favors Trial in the United States.

After analyzing the private interest factors, the court then shifts to public interests. The public interest factors include: 1) deference to be placed on a plaintiff's chosen forum; 2) the local interest in having localized controversies decided at home; and 3) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998).

- 20 -

## 1. Deference Should Be Given to the Plaintiffs' Chosen Forum.

It is a well founded principle that plaintiffs receive deference with respect to their chosen forum. "[T]here is a strong preference for conducting the litigation in the plaintiff's chosen forum, and that only rare circumstances make honoring this choice inequitable." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 533 (7th Cir. 2001). "This is especially true if the defendant resides in the chosen forum." *Madanes v. Madanes*, 981 F. Supp. 241, 265 (S.D.N.Y. 1997).

Here, the Plaintiffs chose their forum in the United States to ensure that they would obtain jurisdiction over the aero company Defendants. All named Defendants are incorporated and organized and have a principal place of business in the United States. Brehaus ¶ 14(h) at Ex. 2; Barton ¶ 2 at Ex. 4. The states in which they are incorporated, organized, and have principal places of business include Seattle, Illinois, and Connecticut. Brehaus ¶ 14(h) at Ex. 2; Barton ¶ 2 at Ex. 4. When a plaintiff leaves her home jurisdiction to sue the defendant where the defendant has established itself and is thus amendable to suit, that choice is clearly not motivated by a desire to impose tactical disadvantage on the defendant. *Iragorri v. United Tech Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). "This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear." *Id.* Because in this case the Plaintiffs have filed in a district having personal jurisdiction over the defendants, this factor favors the Plaintiffs' choice of forum.

## 2. The United States has a Strong Interest in this Controversy.

In *Carlenstople v. Merck & Co, Inc..*, 638 F. Supp. 901, 908 (S.D.N.Y. 1986), the court noted that in tort actions, the local interest of where the product is made in a products liability controversy tends to take center stage in determining the forum. There, plaintiff Swedish singer

- 21 -

filed a products liability claim against defendant American manufacturer of vaccine that gave her arthritis. *Id.* at 903. The *Carlenstople* court reached this conclusion, not only because the product at issue was manufactured in the United States, but importantly, because the United States was also where the drug was designed and tested. *Id.* at 908. The court concluded that "where an allegedly defective drug has been developed, tested and manufactured in the United States, and is being distributed to and presumably used by American citizens, including citizens of the forum, the forum's interest in litigating the controversy is at least equal to that of the foreign citizen's home forum." *Id.* at 909. *See also Herbstein v. Breutman*, 743 F. Supp. 184, 189 (S.D.N.Y. 1990) ("The United States has a definite interest in correcting wrongs committed on its soil, and in deterring similar actions by other individuals and corporations.")

Under the rationale of these cases, the interest of the United States in the present matter should be *at least equal* to that of Indonesia if not *greater*. "The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1400 (8th Cir. 1991). Both the plane and its engines were manufactured in the United States. The products at issue are also sold to and service Americans. Therefore, at the very least, this public interest factor is neutral, if not favorable, to litigating in the United States.

### 3. Indonesian Law Can Be Applied in the United States.

Federal courts are able to apply foreign law in diversity settings. In *Lehman v. Humphrey Cayman, LTD.*, 713 F.2d 339 (8th Cir. 1983), the plaintiff appealed from an order of dismissal on the grounds of forum *non conveniens*. There, the plaintiff's decedent husband died while boating in Grand Cayman and filed suit against the hotel and its rental shops. *Id.* at 340. The Appellate Court there held that "the fact that federal court may be required to apply foreign law is not

dispositive on the forum *non conveniens* issue." *Id.* at 345. Furthermore, "federal courts are quite capable of applying foreign law when required to do so." *Id.* The Appellate Court held that the district court abused its discretion in dismissing the action and reversed it because dismissal on the grounds of forum *non conveniens* should occur only *rarely* and in extraordinary circumstances, and only when the balance of conveniences weighs strongly in favor of dismissal. *Id.* at 347. (*See Piper Aircraft Co.*, 454 U.S. at 255).

Even though the issue of whether the releases are enforceable is not at issue at this point, the Plaintiffs obviously dispute the enforceability of the releases. However, it should be noted that this Court is perfectly capable of determining whether these releases should be enforced. The Federal Court for the Northern District of Illinois is perfectly capable of applying Indonesian law in this matter if it determines that it must. This factor, therefore, remains neutral.

Thus, the balancing of these public interest factors requires the matter to be resolved in the United States.

## IV. CONCLUSION

Indonesia is not an adequate alternative forum for the Plaintiffs' claims. As the home forum for the Defendants (Boeing Company and United Technologies Corporation) and as this is a products liability case of items produced and manufactured in the United States, the private and public interest factors strongly favor the United States over Indonesia. The Plaintiffs, therefore,

- 23 -

respectfully request this Court to deny Defendants' motion to dismiss on the grounds of forum

*non conveniens*.


                                              Respectfully submitted,


                                              /s/  Brian LaCien
                                              Attorney for Plaintiffs

Joseph A. Power, Jr.
Todd A. Smith
Brian LaCien
POWER ROGERS & SMITH, P.C.
70 West Madison Street
Suite 5500
Chicago, IL  60602
Attorney No. 31444
T – (312) 236-9381
F – (312) 236-0920